CHARLES MAGEL et al., Appellants, v. THE GRUET-LI BENEVOLENT SOCIETY OF ST. LOUIS, a Coporation, et al., Respondents.

St. Louis Court of Appeals. Opinion Filed Feb. 3, 1920.

1. **NUISANCES: Injunctions: Improper Use of Bowling Alleys: Baths: Indecent Language: Decree Not Sufficiently Specific.** In an action by property owners to enjoin the use of bowling alleys, shower baths, etc., in an adjoining building as a nuisance, *held* the decree was not sufficiently definite and specific, where it did not order defendants to cease the use of baths so as to expose their nude bodies to the view of any one in plaintiff's back yard and did not enjoin the use of loud, boisterous, and obscene language while using the baths.

2. **INJUNCTIONS: Decree Must Be Specific.** An Injunction decree should be definite and specific so as to inform the defendants what they can and what they cannot do, and also for the reason that unless it is definite and specific it will be impossible for it to be a basis for a contempt charge.

3. **NUISANCES: Injunctions: Bowling Alleys: Noises May Be Abated.** In an action by property owners to enjoin the use of bowling alleys, shower baths, etc., in an adjoining building as a nuisance, *held*, under the evidence, that the manner in which the bowling alleys were conducted and constructed they produced such noises, which were carried through the walls to plaintiff's premises, as to constitute a nuisance, and that such is unnecessary, as by an expenditure of $600 the nuisance could be entirely abated.

4. ———: **Use of One's Own Property: Must Not Prejudicially Affect Rights of Others.** While a person has the right to the exclusive dominion over his own property and the right to enjoy it for all purposes for which such property is customarily enjoyed, yet these rights are subject to the qualification that the use to which one puts his property must be reasonable and such as will not materially and prejudicially affect the rights of others.

5. ———: **Opportunity to Abate May Be Given: Perpetual Injunction.** In an action by property owners to enjoin the use of bowling alleys, shower baths, etc., in an adjoining building, where the evidence discloses that the nuisance can be abated by the expenditure of $600, defendants will, before a perpetual injunction is granted, be given reasonable opportunity to abate the nuisance by changing the construction of their bowling alleys.

6. ———: **Injunctions: Sale of Liquor on Sunday: Equity Will Not Enjoin Commission of Crime.** In an action by property owners to enjoin the use of bowling alleys, shower baths, etc., in an adjoining building as a nuisance, where there was no evidence connecting the other nuisances created, such as noise from the bowling alleys, the use of the baths, and the loud and boisterous and obscene language with the illegal sale of liquors on Sunday, a court of equity is not authorized to grant an injunction restraining the sale of liquor, to do so would be for the court to enjoin the commission of a crime.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Thomas C. Hennings,* Judge.

·REVERSED AND REMANDED *(with directions).*

*August Walz* and *Chas. F. Krone* for appellants.

(1) The pleadings and the evidence for plaintiffs make out a complete and convincing case of nuisance entitling them to an injunction in equity as prayed without any preceding judgment at law declaring the nuisance. *Baker v. McDaniel,* 178 Mo. 447, 467 et seq.; Hall v. Morton, 125 Mo. App. 315-322; Blackford v. Heiman Co., 132 Mo. App. 157; Bradbury Co. v. Laclede Co., 128 Mo. App. 96; Hayner v. Excelsior Co., 129 Mo. App. 691; Fischer v. Missouri Ry., 135 Mo. App. 37-40; Powell v. Brookfield Co., 104 Mo. App. 713; Beck v. Ferd Heim Co., 167 Mo. 195; Hugenslock v. Nishnabota, 163 Mo. 198, 222; Paddock v. Sommers, 102 Mo. 237; Perdin v. St. Louis, 131 Mo. 28-115; McNair v. Biddle, 8 Mo. 257; Holland v. Anderson, 38 Mo. 55; Newham v. Kenton, 79 Mo. 382; Sharkey v. McDermott, 91 Mo. 647; Schneider v. Patton, 175 Mo. 684. (2) The terms of a decree in injunction must be sufficiently definite and specific to enable those bound by it to know what they may do and what they may not do, and must not leave open to difference or controversy the doing or not doing of acts as they may or may not have the effects which the complaint avers are the result of the specific acts or definite conduct pleaded. It will not do to enjoin the acts if they should

disturb plaintiffs when the allegations are that certain specific acts do disturb them. In re Heffron, 179 Mo. App. 639, 658-659; Rumsey v. People's Ry. Co., 144 Mo. 174; Evans v. Gibson, 29 Mo. 223, 226-227; Miltenberger v. Morrison, 39 Mo. 71; Ver Straeten v. Lewis, 77 Iowa, 130; (3) The judgment must pass on the issues raised by the pleadings and presented by the evidence in their support, and it is error for the court to refuse to adjudge any such issue. Evans v. Gibson, 29 Mo. 223, 226-227; Miltenberger v. Morrison, 39 Mo. 71. (4) The issues in a suit for injunction must be passed on under and upon the facts existing at the time of the bringing of suit and not upon those which may prevail at a time subsequent thereto, after changes have occurred or alterations have been made, nor can a defendant, by making alterations subsequent to suit brought defeat it, if it be otherwise meritorious. Donnelly v. Smith, 128 Iowa, 257; Halfman v. Spreen, 75 Iowa, 309; Judge v. Kribs, 75 Iowa, 183; Dounes v. Holtz, 74 Iowa 389. (5) The habitual illegal sale of liquors, and especially so on Sunday, by a benevolent corporation or voluntary association is illegal and *per se* a nuisance, which will be enjoined when it injures property, at the suit of the owner. R. S. 1909, Secs. 7216-7188; State ex rel. v. Missouri Athletic Club, 161 Mo. 576-602; Detroit Co. v. Barnett, 156 Mich. 385; Haggart v. Stehlin, 137 Ind. 43; Kissel v. Lewis, 156 Ind. 233; State ex rel. v. Lamb, 237 Mo. 437; 456; Sullivan Realty Co. v. Crockett, 158 Mo. App. 578-581; State v. Uhrig, 14 Mo. App. 413, 48 L. R. A. 596. (6) The lawful sale of liquors, when coupled with disorderly conduct and profane language about the premises at which they are sold, is a nuisance, which, when it inflicts special injury on private property, will be enjoined at the suit of the owner. State ex rel. Kleinschmidt v. Moon (April 2, 1918), 202 S. W. 606; State ex rel. v. Moffet, 194 Mo. App. 286; Kissel v. Lewis, 156 Ind. 233; State v. Springfield Gas Co., 204 S. W. 945. (7) The use of a bowling alley in connection

with premises used as a dramshop or for the illegal sale of liquors, is itself illegal and a nuisance *per se.* R. S. 1909, sec. 7224.   (8) The Supreme Court may alter or amend a decree rendered by the trial judge to make it conform to the pleadings, evidence and demands of equity.   Darrier v. Darrier, 58 Mo. 222;   Pettingill v. Jones, 30 Mo. App. 280;   Widdicombe v. Childers, 84 Mo. 382;   Rice v. Shelpey, 159 Mo. 399.

*Lowenstein, Scherer & Sievers* for respondent.

(1)   Every person may exercise exclusive dominion over his own property of every description and has the right to enjoy it in all the ways and for all the purposes in which such property is usually enjoyed, even though it works an injury to the property of others, provided his use thereof is reasonable and does not prejudicially affect the rights of others.   While an unreasonable, unwarrantable or unlawful use of one's property resulting in the obstruction or injury to the rights of another may amount to a nuisance, it is well settled that before an injunction can be granted, the existence of the nuisance and the injury must be clearly established. 1 Wood on Nuisance, (3 Ed.), secs. 1 an d2;   2 Wood on Nuisances, (3 Ed.), sec. 820;   Baker v. McDaniel, 178 Mo. 447, 468;   29 Cyc, p. 1225.   (2) One who uses his building in a lawful and proper manner is not guilty of a nuisance merely because the particular use which he seeks to make of it may cause inconvenience or annoyance to a neighbor. The test of a nuisance is whether it is of such character as would likely be physically annoying to a person of ordinary sensibilities and not whether it would annoy persons of extreme or unusual nervousness. 29 Cyc. page 1159; 2 Wood on Uuisances, (3 Ed.), secs. 617 and 800;   Louisville Coffin Co. v. Warren, 78 Ky. 400;   McCaffrey's Appeal, 105 Pa. 253, 257;   (3) While appellate courts in an equity case are not bound by the findings of the lower courts; where the evidence is oral and conflicting, the appellate courts defer to

the findings of the Chancellor on all issues of fact and will not disturb his findings, unless manifestly wrong, as he had the witnesses before him and could judge their credibility from their appearance and demeanor on the stand. Vaughan v. Vaughan, 251 Mo. 441, 447; Wyrick v. Wyrick, 162 Mo. App. 723; Phillips v. Trust Co., 214 Mo. 669; Creamer v. Bivert, 214 Mo. 473; Huffman v. Huffman, 217 Mo. 182; Jones v. Thomas, 218 Mo. 508; Sedden v. Trust Co., 146 Mo. App. 126; St. L. and S. F. R. Co. v. Yankee, 140 Mo. App. 274; 29 Cyc, p. 1253. (4) Qualified decrees are to be commended, for the freedom of one person ought not to be curtailed more than the right of relief of the other demands. The relief to be awarded rests in the sound discretion of the court, and appellate courts will not interfere with the decisions of the trial courts unless the abuse of that discretion is clearly shown. Sharkey v. McDermott, 91 Mo. 647, 657; Blackford v. Construction Co., 132 Mo. App. 157; Schaub v. Construction Co., 108 Mo. 122; 29 Cyc, pp. 1248 and 1253. (5) An injunction will not be granted where a nuisance has been abated in good faith, unless it has been but partially abated or there is danger of its recurrence. In the case at bar certain constructional changes were made in the bowling alley, after the hearing had begun, with the knowledge of the court and by consent of the parties. The court found that there was not such noise caused by the bowling alleys as to disturb the plaintiffs. 2 Wood on Nuisances, (3 Ed.), sec. 800; 29 Cyc, p. 1250; Perry v. Howe, 125 Iowa, 415, 418. (6) The decree granted by the court with reference to the baths, language and conduct follows almost *verbatim* the prayer for relief as set out in plaintiffs' petition. If this decree is erroneous, the error was invited by the appellant in not clearly setting out in the prayer the relief desired, and they cannot now be heard to complain thereof. Price v. Town of Breckenridge, 92 Mo. 378; Schaub v. Construction Co., 82 S. W. 1095; Mitchell v. Wabash Ry. Co., 97 Mo. 411. (7) The prayer for relief in plaintiffs'

petition does not ask that the sale of liquors on defendants' premises be enjoined; they should not now be heard to complain of the fact that no mention thereof is made in the decree. If such sale ever constituted a nuisance, it has been forever abated by the operation of national prohibition, and this court will not now indulge in formulating an idle decree, when there is nothing to enjoin. Schaub v. Construction Co., 82 S. W. 1095, 1096; Perry v. Howe, 125 Iowa 415, 418; Pomeroy's Equity, sec. 1357. (8) The dispensing of liquors on defendants' premises was in all respects lawful and constituted no nuisance. But even if a nuisance were created in this manner it would be a public nuisance, and before plaintiffs could obtain an injunction they must establish that they have suffered a special and different kind of injury thereby from that suffered by others in that locality. And inasmuch as plaintiff, who was a member of defendant association, and drank there, thereby helped to create such nuisance, if it was one, he should not be heard to complain thereof. Warren v. Cavanaugh, 33 Mo. App. 102; Glaessner v. Brewing Association, 100 Mo. 509; Baker v. McDaniel, 178 Mo. 447; Bothe v. C., B. & Q. R. Co., 181 Mo. 720; Hodson v. Walker, 170 Mo. App. 632. (9) The defendant is a bona-fide social organization, not incorporated for profit, and not designed to violate or evade the law, and the sale of liquor by such organization to its members is not a violation of the dramshop law within the meaning of section 7188 of the Revised Statutes of 1909, and defendants' institution cannot be closed up or enjoined for individual isolated acts of its patrons, especially when it has been established that defendants maintained their affairs and their building in a highly proper and respectable manner. State ex rel. St. Louis Club, 125 Mo. 308; State ex rel. Moffett, 194 Mo. App. 286.

BIGGS, C.—This is an equity suit, the purpose of which is to abate and enjoin the maintenance of an alleged nuisance.

The plaintiffs, being husband and wife, are the own-ers of a group of dwelling houses called flats, being known as numbers 2708-2710 and 2714 Arsenal street, which is a portion of the city of St. Louis used mainly for residences and small stores. The plaintiffs reside in the upper flat of said group and the one which ad-joins the property owned and occupied by the defend-ants.

The defendants are organized under the statutes as benevolent or educational corporations and are charter-ed as such, and are sometimes called social clubs. One of the defendants is the owner of the property directly west of the plaintiffs' property, extending from the plaintiffs' property to the corner of Iowa avenue, and on which property the defendants have erected and maintain buildings known as Swiss Hall and Swiss Turner Hall.

In addition to the foregoing facts, the bill in sub-stance alleges, that the three-story building known as Swiss Hall adjoins the western wall of the plaintiffs' flats for a distance of some twenty feet; that there is also to the west of plaintiffs' flats a garden maintained by the defendants and which extends back from Ar-senal street a short distance to the defendants' build-ings; that the eastern wall of a part of the Swiss Hall stands flat up against the west wall of the plaintiffs' flats; that in the basement of this building owned and maintained by the defendants, the defendants operate four bowling alleys, the pits of which are at the eastern end and against the east wall of defendants' buildings which is in contact with plaintiffs' west wall; that the defendants' members in using these bowl-ing alleys throw the balls from the western end to the eastern end of their building so that the noise and turmoil is communicated to and through plaintiffs' west wall and to their flats, and that the use of the bowling alleys maintained by the defendants cause great noise and turmoil, disturbing the peace of the plaintiffs and their tenants, prevent them from sleep-

ing, reduced the value of their property, and permanently injure their property.

It is further alleged that the defendants were in the habit of leaving the windows of the room where they maintain shower baths open, and which windows face plaintiffs' yard, exposing the bathers to plaintiffs' view; that the defendants maintain a bar on their premises where intoxicating liquors were dispensed on Sundays and week-days, and that the defendants' members habitually and continually, in the use of the baths, in bowling and also at the bar, use loud, boisterous, profane and obscene language.

The bill prays that the defendants be enjoined from using the bowling alleys and using the said baths, in such manner as to cause plaintiffs' annoyances and disturbances and injuries and from the use of either without compliance with such changes in the condition of their situation and construction as it may appear proper to require defendants to make to preclude injury to plaintiffs' rights, and from the use of the indecent, profane and obscene language herein complained of, and from any and all other acts in the use of the premises as now constructed and used, whereby the peace, comfort and health of the plaintiffs have been, or may be hereafter disturbed, the value of their property impaired and their tenants caused to remove from their premises, and for general relief.

The defendants answer by general denial, and also set up that defendants have invested a large sum of money in their property; that the apparatus used for bowling is of the most modern type to prevent the balls or pins striking the walls, and that plaintiffs complain only because they failed to sell the defendants the adjoining lot.

After a hearing the court entered a decree for the plaintiffs, granting to them an injunction as to the indecent use of the baths and also as to the use of indecent language and disorderly conduct, but denied their request for injunction as to the use of the bowling

alleys and as to the illegal sale of liquors on the defendants' premises.

This decree being unsatisfactory to the plaintiffs they have brought the case here for review, contending that the language of the decree is ineffective to enjoin what it purports to enjoin, and further it was error for the court to refuse to enjoin the use of the bowling alleys and also the illegal sale of liquors.

As to the ineffectiveness of the decree to enjoin what it purported to enjoin.

The decree, omitting the formal parts, is as follows:

"The court doth further find, that the defendants, and the members of the defendant organizations have used the baths installed and used in connection with the property of said defendants, described in the pleadings and known as No. 2726 Arsenal Street, in the City of St. Louis, Missouri, in such a manner, and permitted their members to use such language in the hearing of plaintiffs, as to constitute a nuisance; and that the continuance of the practice of the bathers will result in an injury to plaintiffs; and that defendants, in the use of the garden on the north side of their property and the members in leaving the hall, speak in such loud and boisterous tones and at times use language that amounts to a nuisance to plaintiffs; and that they should be restrained from using their property in such manner, to the injury of plaintiffs.

"And it is therefore, ordered, adjudged and decreed by the court, that a permanent injunction be granted herein, and that the defendant organizations and their members and each of them be, and are hereby perpetually enjoined and restrained from using the baths in such manner as to cause plaintiffs annoyance and disturbance, and from using indecent, profane and obscene language, in, on and about their premises, so as to destroy the peace, comfort and health of the plaintiffs, in the use, occupancy and enjoyment of their premises

described in the petition and known as Nos. 2708, 2710 and 2714 Arsenal Street, in the City of St. Louis, Missouri.''

An injunction decree should be definite and specific so as to inform the defendants what they can and what they cannot do, and also for the reason that unless it is definite and specific it will be impossible for it to be a basis for a contempt charge. The first paragraph of the decree seems to be a finding of fact as to what the defendants did, but it does not set out the manner in which the baths were used as shown by the evidence. The finding is merely that the baths were used in such a manner as to constitute a nuisance without stating how they were used. Being a finding for plaintiffs the allegation of plaintiffs' petition was to the effect and the plaintiffs' evidence tended to prove the allegation, that the bathers used the baths with the windows open which adjoined plaintiffs' back yard, and thereby exposed to plaintiffs' view their nude bodies. Presumptively the court found on this question of the use of the baths in behalf of plaintiffs, and having so found when it came to the decree the defendants should have been ordered to cease the use of the baths so as to expose their nude bodies to the view of anyone in plaintiffs' back yard, and should further have been enjoined from using or permitting the use of loud, boisterous and obscene language while using the baths.

In the finding of facts in the decree the court found that the defendants while in the garden on the north side of their property and also in leaving the hall, spoke in loud and boisterous tones and at times used language that amounts to a nuisance to plaintiffs, and that they should be restrained from using their property in such manner to the injury of plaintiffs. Presumably the language referred to in the paragraph finding the facts is the indecent, profane and obscene language that is decreed against in the second paragraph, and we think sufficient in that regard.

The record before us is quite voluminous, containing something over 300 pages, and it would serve no useful purpose for us to attempt to set out the evidence.

As to the bowling alleys, it appears that there were 24 different clubs and societies that meet at the Swiss Turner Hall; that the bowling alleys were used practically every evening in the week, especially on Saturdays and Sundays and up until late hours in the night and on occasions running into the hours of the morning; that prior to the summer of 1916 the bowling alleys had been in operation for some time, but on account of the fact that before that time there was a north and south partition wall in the basement of the Swiss Hall which separated the bowling alleys from plaintiffs' west wall and the defendants' east wall and several feet west therefrom and which prevented the noises caused by the bowling from disturbing the plaintiffs, plaintiffs had not complained.

It appears from the evidence that during the summer of 1916 this partition wall was removed and the pits of the alleys where the pins break and the balls collide with the cushions were moved eastwardly so as to bring them nearer to the plaintiffs' west wall and almost against defendants' east wall.

As to the effect of the noises produced by the bowling, the evidence of plaintiffs consisted of testimony of themselves, of their tenants, neighbors, relatives, friends. In a general way, it established a clear case to the effect that the noises produced by the bowling rendered the condition of their premises intolerable; that it disturbed their peace and kept the plaintiffs and at least one of their tenants from sleeping at night. The evidence of the plaintiffs' witnesses generally was to the effect that the bowling at first caused a rumbling sound as the ball was started down the alleys, resembling thunder which was followed by a loud noise caused by the contact of the balls with the pins.

A real estate man who was familiar with the values of property in that neighborhood, testified that the

value of plaintiffs' property was lessened by the noise, and two of plaintiffs' tenants testified that unless the noise was abated that they would move from the premises. The noise produced not only tended to render the flat immediately east of defendants' property unenjoyable, but it also extended to the other flat of plaintiffs which was further to the east.

During the progress of the trial at the suggestion apparently of defendants' counsel, which was concurred in by the court and plaintiffs' counsel, the cause was adjourned for the purpose of permitting the defendants to make certain structural changes in their property with the idea that they could perhaps abate the noise. To this end the defendants at a cost of about $70 put in a hollow tile wall at the back of the pits of the bowling alleys extending from the floor to the ceiling and almost flush up against the defendants' east wall. There was perhaps a space of a few inches between the walls, but the evidence is contradictory on this question. However, upon the trial being resumed the testimony of plaintiffs is to the effect that the noise was just as great as it had been before.

Defendants produced a number of witnesses, being members of the various organizations, who contradicted to some extent the plaintiffs' testimony in reference to the noise produced by the bowling, but none of them were at any time in the plaintiffs' house or in his flats at the time the bowling took place. Several of them went into the plaintiffs' back yard while the bowling was in progress, and testified that they could not detect the fact that the bowling was going on.

Plaintiffs produced a consulting engineer as a witness, who qualified as an expert on the question of sound and sound conducting bodies and their practical effects. He testified in answer to a hypothetical question involving the facts as presented by the evidence, that the noise of bowling would be communicated through the walls of the buildings and into the residence of the plaintiffs to a considerable greater extent than it would

be communicated to the surrounding air; that the communication would be possibly ten times as great; that the walls of the buildings would act as a conductor of the sound waves. The witness further testified that all walls act as a sounding board if they have a plain surface, and that where the wall between the property of plaintiffs and defendants was reinforced or added to by a hollow tile glazed wall, that it is probable that this would cause the sound to be carried with more intensity.

The evidence is uncontradicted that it is not necessary for the defendants in order to maintain what is known as a regulation bowling alley to have the pits of the alley where the noise is produced close to the plaintiffs' wall; that at a cost of about $600 the alleys could be moved westwardly a sufficient distance so as to obviate the noise that causes the disturbances to the plaintiffs; that a new north and south partition wall could be constructed in the basement westwardly from the defendants' east wall a sufficient distance so as to leave a considerable air space between the two walls and with the pits of the bowling alleys against this new partition wall the nuisance would be obviated.

From a reading of the record it appears that the manner in which these bowling alleys were conducted and constructed they produced such noises which were carried through the walls to the plaintiffs' premises as to constitute a nuisance, and that such is unnecessary, as by an expenditure of $600 the nuisance can be entirely abated.

In Snyder v. Cabell, 29 W. Va. 48, the court enjoined the maintenance of a skating rink where it appeared the noise from the rink materially disturbed persons residing in proximity thereto, on the ground that the same was a nuisance.

Also in Cape May M. E. Church v. Cape May Grain, etc. Co., 73 N. J. Eq. 257, the court restrained the operation of a skating rink situated adjacent to a church and parsonage, on the ground that its operation

constituted a nuisance, it appearing that the week-day services of the church were interfered with on account of the noise, and also that the Pastor was unable to pursue his work in his study, which was only a few feet from the rink.

Likewise in St. Margaret's Church v. Stephens, 29 Ont. 185, the court granted an injunction against the managers of a skating rink, restraining them from causing a band to be played, thereby disturbing church services in a church situated on a lot adjoining the rink, on the ground that the noise created constituted a nuisance.

In Shreveport v. Liederkranz Society, 130 La. 802, 40 L. R. A. (N. S.) 75, while the court denied the injunction on the ground that the evidence failed to show that the bowling alley as conducted by defendant was a nuisance, the court says:

"If the testimony in the record showed that the acts of defendant (operating the bowling alley) disturbed the physical comfort of the neighbors to an injurious extent, it would become our duty to restrain the defendant."

Also in Pape v. Pratt Institute, 127 App. Div. 147, 111 N. Y. Supp. 354, although the court recognized that a bowling alley is not in itself a nuisance, yet, since the one at bar was alleged to be located and conducted in such a manner as to constitute one, and being of a continuing nature, an injunction was granted to restrain its maintenance.

While it is true that a person has the right to the exclusive dominion over his own property and the right to enjoy it for all purposes for which such property is customarily enjoyed, yet these rights are subject to the qualification that the use to which one puts his property must be reasonable and such as will not materially and prejudicially affect the rights of others. As is said by Mr. Wood in his work on Nuisances (3 Ed.), page 3:

"Every person yields a portion of his right of absolute dominion, and use of his own property, in recognition of and obedience to, the rights of others, so that others may also enjoy their property without unreasonable hurt or hindrance . . . As to what is a reasonable use of one's property must necessarily depend upon the circumstances of each case; for a use for a particular purpose and in a particular way in one locality that would be lawful and reasonable might be unlawful and a nuisance in another."

In the instant case plaintiffs' owned property which they occupied as their home in a locality of the city which was in the main given over to residences and small stores. We think the evidence disclosed that their right to reasonably enjoy this property as a home was materially interfered with and unnecessarily so by the defendants in the manner of operating their bowling alley and in the way in which it was constructed. It should not be necessary to enjoin the maintenance of this bowling alley, but in view of the evidence which discloses that the nuisance can be abated by an expenditure of $600 as heretofore stated, we think the defendants should be given a reasonable opportunity of abating th nuisance by changing the construction of their bowling alleys; that in the event this is not done that then the use and maintenance of the bowling alleys should be perpetually enjoined.

As to the question of enjoining the illegal sale of intoxicating liquors, on defendants' premises on Sundays, the evidence shows that liquors were dispensed to all those members of the various organizations who held membership cards and that this was done at a service bar on defendants premises. This may or may not rave constituted a criminal offense under the laws of Missouri, and we do not find it necessary to decide that question here. The evidence does not show that the fact that these liquors were dispensed on Sunday caused the nuisances that were disclosed by the evidence. A court of equity has no jurisdiction to enjoin the com-

mission of a crime. [State ex rel. Thrash v. Lamb, 237 Mo. 437, 141 S. W. 665.] All the plaintiffs' evidence tended to prove in reference to the matter was that these various societies dispensed intoxicating liquors to their members on Sunday and that this constituted an offense under the laws of Missouri. There was no evidence connecting the other nuisances created, such as noises from the bowling alleys, the use of the baths and the loud and boisterous and obscene language with the illegal sale of liquors on sunday. To grant the plaintiffs the relief asked for would be for us to enjoin the commission of a crime. This a court of equity will not do, as this is a matter to be dealt with by the criminal courts.

For the reasons herein stated the Cimmissioner recommends that the judgment be reversed and the cause remanded with directions to enter a decree in behalf of plaintiffs' consistent with the views herein expressed.

PER CURIAM:—The foregoing opinion of Biggs, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded with directions to enter a decree in behalf of plaintiffs consistent with the views herein expressed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.